UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Edmund D. LaChance, Jr.

    v.                                    Civil No. 07-cv-127-PB

State of New Hampshire

**REPORT AND RECOMMENDATION**

Before the Court is Edmund LaChance's petition for a writ of habeas corpus (document no. 1), filed pursuant to 28 U.S.C. § 2254. The petition is before me for preliminary review to determine, among other things, whether it states a claim upon which relief might be granted. See United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2); Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Because I find that this Court lacks jurisdiction over this matter, I recommend that LaChance's petition be dismissed.

Standard of Review

Under this court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review and

to prepare a report and recommendation advising the district judge whether the action, or any portion thereof, should be dismissed because:

> (I) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2). In conducting a preliminary review, the Court construes pro se pleadings liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the petitioner and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard

of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988). Applying this standard, the facts alleged by LaChance are as follows.

## Background

LaChance is a Massachusetts prison inmate. Prior to his incarceration in Massachusetts, he was incarcerated at the New Hampshire State Prison. During LaChance's New Hampshire incarceration, he became acquainted with, and enamored of, a female corrections officer named Jessica Millette. In February of 2005, while serving his Massachusetts sentence, LaChance sent a letter to Millette declaring his feelings for her and expressing his hope that Millette returned his feelings. The letter was sent in an envelope that falsely indicated a return address of a special agent from a law enforcement agency. In his letter, LaChance made specific references, not only to Millette, but to Millette's young daughter, and the town that Millette lived in. In the letter, LaChance also said that he would not seek to contact Millette again if she did not answer the letter,

as he would understand her lack of response to mean that she was not interested in pursuing a relationship with LaChance. Millette did not respond to LaChance's letter.

LaChance, through members of his family, attempted to ascertain where Millette lived in an effort to send her flowers, and to send Millette's daughter a gift. LaChance had flowers delivered to an address he believed belonged to Millette, but the flowers were not delivered because LaChance did not have Millette's correct address. In the summer of 2005, after attempting to send the flowers, and believing they had arrived, LaChance sent Millette a second letter, again professing his feelings of affection and his hope that Millette would enter into a romantic relationship with him. As LaChance did not have Millette's correct address, the second letter, like the flowers, was mailed by LaChance, but not received by Millette.

Millette, upon receiving LaChance's first letter notified the New Hampshire State Prison authorities that she had received the letter. As a result, LaChance's communications in and out of the Massachusetts prison were monitored, and his flower order, second letter to Millette, efforts to locate Millette's address through his brother, and to contact Millette by telephone through

4

his mother, were discovered.  On October 17, 2005, Major Ross Cunningham of the New Hampshire State Prison sent LaChance a letter telling him to cease any attempt to correspond with Millette immediately or risk disciplinary action at the prison where he was being housed.  LaChance made no further effort to contact Millette after receiving Cunningham's letter.

LaChance, however, felt as though he had been wronged by Millette's actions in turning the matter over to Cunningham.  To exact revenge, LaChance sent letters to the Governor of New Hampshire and the Concord Monitor newspaper claiming that Millette had been arrested and convicted for driving while intoxicated while she was employed as a corrections officer. LaChance's letter to the Concord Monitor also stated that Millette had consorted inappropriately with prison inmates or former inmates, and implied that Millette bore some responsibility for, or had a connection to, the then-recent and well-publicized escape of several inmates from the yard of the New Hampshire State Prison.  LaChance sent copies of his letters to both Cunningham and Millette.

On May 8, 2006, in response to LaChance's letters and other conduct, Millette filed a request in the Concord District Court

for the issuance of a "Stalking Temporary Order" directing LaChance not to make any contact with Millette or Millette's daughter, not to follow Millette or her daughter or to appear at their home, work, or school, not to take or damage Millette's property, and to relinquish any firearms or other deadly weapons in his possession.  The Court granted that request on May 8, 2006, and issued a temporary order.  The Court also scheduled a hearing for June 6, 2006 to determine whether a final order should issue.

A hearing was held on June 6, where LaChance appeared by videoconference.  LaChance requested a continuance of the matter because he claimed he had no access to New Hampshire statutes or case law with which to challenge the allegations against him. The motion was denied and the hearing proceeded as scheduled. After the hearing, the Court entered a "Stalking Final Order" pursuant to N.H. Rev. Stat. Ann. 633:3-a, finding that Millette had been stalked by LaChance, and ordering LaChance not to abuse or have any contact with Millette or any member of her family or household, directly or indirectly, for a period of one year.

LaChance appealed the issuance of the final order to the New Hampshire Supreme Court.  On appeal, LaChance argued that he had

been improperly denied access to the means to represent himself at the hearing. LaChance also challenged the sufficiency of the evidence presented at the hearing. Ultimately, the Court denied the appeal. LaChance filed an unsuccessful motion to reconsider the denial.

This petition followed, raising two constitutional challenges to the issuance of the Stalking Final Order, both alleging violations of his right to due process under the Fourteenth Amendment. First, LaChance argues that he was denied due process when he was not permitted to obtain a copy of the New Hampshire stalking statute prior to the June 6 hearing, and thus was not able to challenge the constitutionality of the statute before the hearing court. Second, LaChance claims that the New Hampshire Supreme Court's denial of a free transcript deprived him of due process as he was not able to properly present his arguments on appeal.

## Discussion

To petition a federal court for habeas corpus relief from a State court judgment, the applicant must be "in custody in violation of the Constitution or laws or treaties of the United States." See Garlotte v. Fordice, 515 U.S. 39, 40 (1995) (citing

28 U.S.C. § 2254(a)); Maleng v. Cook, 490 U.S. 488, 490-91 (1989).  The "in custody" requirement is jurisdictional.  See Carafas v. LaVallee, 391 U.S. 234, 238 (1968).  While the habeas statute limits the availability of federal habeas review to those who are "in custody," that statute does not define the boundaries of "custody" or, by its own terms, limit "custody" to any particular situation.  See Jones v. Cunningham, 371 U.S. 236, 238 (1963).  Although habeas relief is not limited to those who are in actual physical custody according to a State court judgment, to be "in custody," an applicant for habeas relief must be subject to significant restraints on his liberty that are "not shared by the public generally."  Id. at 239-40.

The First Circuit has followed the Supreme Court in recognizing a number of situations where an applicant who is not in the physical custody of the State has nevertheless been permitted to claim custodial status for purposes of requesting habeas relief.  Lefkowitz v. Fair, 816 F.2d 17, 19 (1st Cir. 1987) (citing Justices of Boston Mun. Ct. v. Lydon, 466 U.S. 294, 301 (1984) (pretrial release on personal recognizance constitutes custody); Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara County, Cal., 411 U.S. 345, 349-51 (1973) (release on

personal recognizance pending execution of sentence constitutes custody); Cunningham, 371 U.S. at 240-43 (habeas petitioner on parole is in custody)).  The First Circuit has also specifically found that custody requires, at least, some type of ongoing or continuing governmental supervision, and that "[h]e who seeks the writ must be incarcerated, or under imminent threat of incarceration, in order to meet the custody requirement of the habeas statute."  Tinder v. Paula, 725 F.2d 801, 803-04 (1st Cir. 1984).

Petitioner here is under certain restrictions on his freedom of movement, not experienced by the public generally, imposed by a civil order issued pursuant to the authority of N.H. Rev. Stat. Ann. 633:3-a.  Specifically, LaChance is restrained from having any direct or indirect contact with Millette or any member of her household or family, is restrained from being within 900 feet of Millette or any member of her household or family, and must relinquish all firearms and other deadly weapons in his possession.[1]  Should LaChance violate the directives of the

---

[1] I note that LaChance is serving a 17-25 year prison sentence for rape in Massachusetts.  Accordingly, the restrictions imposed by the Concord District Court do not impose any restraint that LaChance is not already subjected to, including limitations on his contacts with those outside the prison, the inability to contact or follow Millette in person,

Stalking Final Order, he would be subject to criminal prosecution for stalking, or a finding of civil or criminal contempt.  Any such violation could result in LaChance's incarceration.  As LaChance points out, should he twice be accused of violating the Stalking Final Order, his first offense would be prosecutable as a misdemeanor, and his second offense, if it occurred within seven years of the first offense, could be prosecuted as a felony under New Hampshire law.[2]  See N.H. Rev. Stat. Ann. 633:3-a(VI)(a).

If LaChance were to be incarcerated for violating the Stalking Final Order, he would be "in custody" for purposes of habeas review.  See Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 23 (1st Cir. 1991), cert. denied, 502 U.S. 886.  However, LaChance is not incarcerated, or subject to certain and imminent incarceration, pursuant to a violation of the Stalking Final Order.  Therefore, LaChance is not "in custody" pursuant to that

---

and the inability to possess any firearm or other deadly weapon.

[2] LaChance refers to this seven year period as a "probationary" period.  LaChance, however, either misunderstands or mischaracterizes the statute.  There is no probation or other governmental supervision imposed during the seven year period, beyond what is contained in the Stalking Final Order, and the general requirement applicable to all members of the public, not to violate the law or orders of the court.

order.  Any incarceration that may occur pursuant to a violation of the Stalking Final Order in the future is merely "a speculative possibility that depends on a number of contingencies" over which LaChance has control.  See id. at 23-24.  Further, LaChance is not subject to any supervisory control by the government, such as probation or bail, pursuant to the Stalking Final Order.  See id. at 24.  The fact that LaChance, if he violates the Stalking Final Order in the future, may be subject to incarceration for such a violation, does not give rise to custody for habeas purposes.  Compare Spencer v. Kemna, 523 U.S. 1, 15 (1998) (rejecting analogous claim that case-or-controversy requirement is satisfied by general assertion or inference that respondents may be prosecuted for a future violation of a valid criminal law, and resting ruling on assumption that people will conduct activities within the law and so avoid prosecution and conviction).  Finally, while the Stalking Final Order does impose some non-incarcerative restrictions on LaChance's conduct that do not apply to the public generally, at least four federal district courts have rejected habeas petitions which challenged civil restraining orders on the grounds that such an order did not include

restraints severe enough to place the petitioner "in custody" for habeas purposes.  See McCreary v. Birkett, No. 2:06-CV-11195, 2006 WL 3257223, at *3 (E.D.Mich. Nov. 9, 2006); Strout v. Maine, No. Civ. 04-40-P-S, 2004 WL 1571768, at *3 (D.Me. July 13, 2004); Rouse v. Chen, No. C 02-01272 VRW(PR), 2002 WL 826835, at *1 (N.D.Cal. Apr. 19, 2002); Jones v. McKibben, No. C 93-4536 FMS, 1994 WL 62105, at *1 (N.D.Cal. Feb. 8, 1994).  I find that the Stalking Final Order at issue here does not place restraints on LaChance's liberty sufficient to render him "in custody" for purposes of obtaining federal habeas relief.

For the reasons stated herein, I find that LaChance has not fulfilled the "in custody" requirement for federal habeas review.  Accordingly, this Court lacks jurisdiction to consider LaChance's petition.  I therefore recommend that the petition be dismissed.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of

Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_/s/ James R. Muirhead_
James R. Muirhead
United States Magistrate Judge

Date:   May 8, 2007

cc:     Edmund D. LaChance, Jr., pro se

13